**PICKER X–RAY CORPORATION,**
Appellant,

v.

**GENERAL MOTORS CORPORATION,**
Appellee.

No. 3033.

Municipal Court of Appeals for the District of Columbia.

Argued July 9, 1962.

Decided Nov. 28, 1962.

Francis L. Young, Jr., Washington, D. C., with whom Darryl L. Wyland, Washington, D. C., was on the brief, for appellant.

James C. Gregg, Washington, D. C., with whom Hugh Lynch, Jr., Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Corporate appellant sought recovery from appellee manufacturer for breach of implied warranty in the sale of a new automobile through a retail dealer. Three months after its purchase, while being operated by appellant's employee, the vehicle was damaged when it left the roadway, allegedly due to a defective steering mechanism. Appellant sued both the manufacturer and the dealer, alleging as to each negligence *and* breach of implied warranty of fitness. Appellee manufacturer moved to dismiss the warranty count on the ground there was no privity between it and the purchaser. From the granting of this motion, this appeal followed.

Since we must assume the allegations in the complaint to be true, the only question before us is whether a purchaser can sue a manufacturer for breach of an implied warranty of the fitness of its product bought through a retail outlet.

Historically, an action based upon warranty originated as a tort similar to an action for deceit, but by accident warranty came to be associated with contractual actions and thus assumed some aspects of tort, such as the measure of damages, and some aspects of contract, such as the requirement of privity.[1] The latter requirement was imported into the law from a dictum in Winterbottom v. Wright, 10 M. & W. 109, 11 L.J. Ex. 415, 152 Eng.Rep. 402, and was followed by courts in most jurisdictions which prohibited any suit by a consumer against a manufacturer of a defective product, either on the basis of negligence or for breach of warranty, in the absence of a contractual relationship between them. As to negligence, the requirement of privity was ruled out by Justice Cardozo in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916 F., 696, but it has persisted principally in warranty actions.

In the recent trend where privity has no longer been required, the courts have given numerous reasons for their rulings to ameliorate the harshness of the doctrine. Judicial opinions have relied upon concepts of agency, assignment and third party beneficiary. Then a more functional approach to the problem was taken by some courts which simply dispensed with the rule itself, holding that the warranty "runs with the product," while others have relied frequently upon public policy.

Methods of commerce have drastically changed in the twentieth century. Now the retailer has little control over the products he sells because they are packaged or built before they reach him. He can neither protect his purchaser from harm nor himself from liability, yet he is liable to the immediate purchaser for breach of warranty. The only justification for holding the innocent retailer, and not the manufacturer, liable to the purchaser is that the former can recoup his loss by suing the manufacturer. Hence, a disclaimer of warranties or some other break in the chain can fasten liability on an innocent party, while the manufacturer, who is in better position to protect the consumer, goes free from liability. Moreover, even if successful, subsequent recoupment actions by retailers are an unnecessary burden upon the courts and litigants alike, add to congested trial calendars and delay the conclusion of litigation. More important, by reason of the tremendous increase in national advertising methods and programs, prospective purchasers no longer rely upon representations or warranties by retailers. Modern advertising by manufacturers on a large scale stresses trademarks and trade names and the superior qualities and benefits of their products and induces purchasers to ask for products by name because they have been represented as reliable and fit for the specific purpose and better than other similar products on the market. Lavishly-presented publicity pro-

---

1. Williston, Sales (rev. ed.) §§ 195–197; Prosser, Torts (2d ed.) § 83.

grams by TV, radio and the press cultivate public favor and are major inducements in the consumer's final decision to buy. Thus, the advertising runs from the manufacturer to the ultimate consumer, and the manufacturer should not be permitted to shield himself from liability on the technical ground of lack of privity with the consumer or user, or for lack of foreseeable injury to the latter.

The courts have begun to disassociate contract from warranty and to recognize that a warranty is a duty imposed by law for protection of the buying public, regardless of the consent of the parties.[2] The nineteenth-century policy of protecting young manufacturers is now giving way to one of protecting innocent consumers from unexpected injuries or losses due to defective products over which they have no control. Manufacturers should properly assume those burdens incident to the cost of doing business. Liability should no longer be dependent upon any contractual relationship between the manufacturer and the ultimate consumer or user.

We are aware that in this jurisdiction the United States Court of Appeals for the District of Columbia Circuit decided in 1932 that "according to the great weight of authority, a manufacturer of food is not liable to third persons under an implied warranty, because there is no privity of contract between them." Connecticut Pie Co. v. Lynch, 61 App.D.C. 81, 57 F.2d 447. This ruling was followed in another food case, Hanback v. Dutch Baker Boy, Inc., 70 App.D.C. 398, 107 F.2d 203.

Ordinarily we would feel bound to apply this principle of law to the present case.

However, from a study of recent decisions on the question of privity in implied warranty cases involving food products as well as manufactured articles, we note that there is a distinct trend to repudiate this doctrine entirely.[3] The more recent authorities, in cases involving both food and defectively-manufactured products which would be dangerous to life or limb, have eliminated the requirement of privity between the maker and the reasonably-expected ultimate consumer or user and have ruled that, in keeping with modern methods of commerce and sales, an implied warranty runs between the manufacturer or wholesaler and the consumer who buys his product through a retail outlet. Three of the cases relied upon in Connecticut Pie Co. v. Lynch, supra, have been overruled or modified.[4]

Federal judges, in following state law, have been prone to advance implied warranty liability at the expense of the privity requirement. B. F. Goodrich Company v. Hammond, 10th Cir., 269 F.2d 501 (defective tire); Chapman v. Brown, D.Hawaii, 198 F.Supp. 78 (a flammable hula skirt); Bowles v. Zimmer Manufacturing Company, 7th Cir., 277 F.2d 868, 76 A.L.R.2d 120 (defective surgical pin); McQuaide v. Bridgeport Brass Company, D.Conn., 190 F.Supp. 252 (insect spray); Spada v. Stauffer Chemical Company, D.Or., 195 F. Supp. 819 (herbicide); Thompson v. Reedman, E.D. Pa., 199 F.Supp. 120 (passenger in another automobile); Taylerson v. American Airlines, Inc., S.D. N.Y., 183 F. Supp. 882 (airplane instruments); Hinton v. Republic Aviation Corporation, S.D. N.Y., 180 F.Supp. 31 (passengers in allegedly defective aircraft).

2. Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 831, 832, 142 A.L.R. 1479; Prosser, Torts (2d ed.) § 83.

3. Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099, 1112; Randy Knitwear, Inc. v. American Cyanamid Company, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, 402.

4. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R. 2d 1; Randy Knitwear, Inc. v. American Cyanamid Company, supra, note 3; Greenberg v. Lorenz, 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773; General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655 (cert. den. Sup.Ct. Tenn.).

In state courts, requirement of privity has been generally abandoned in food product actions based upon implied warranty violations where the food products are shown to be in the same condition as when they left the control of the manufacturer.[5] Numerous other state decisions have eliminated the requirement in nonfood cases.[6] In the Henningsen case, supra, involving a defective steering mechanism, the Supreme Court of New Jersey, in an extensive opinion holding that lack of privity was no bar to an action against the manufacturer by a purchaser, stated (page 80 of 161 A.2d):

> "With the advent of mass marketing, the manufacturer became remote from the purchaser, sales were accomplished through intermediaries, and the demand for the product was created by advertising media. In such an economy it became obvious that the consumer was the person being cultivated. * * * He [the consumer] signified such a person who, in the reasonable contemplation of the parties to the sale, might be expected to use the product. Thus, where the commodities sold are such that if defectively manufactured they will be dangerous to life or limb, then society's interests can only be protected by eliminating the requirement of privity between the maker and his dealers and the reasonably expected ultimate consumer. In that way the burden of losses consequent upon

use of defective articles is borne by those who are in a position to either control the danger or make an equitable distribution of the losses when they do occur."

■■■ There seems to be some confusion in understanding the nature of implied warranty liability. In the first place, concepts of negligence and fault, as defined by negligence standards, have no place in warranty recovery cases. Proof of negligence is unnecessary to liability for breach of implied warranty and the lack of it is immaterial to defense thereof. Since the warranty is *implied*, either in fact or in law, no express representations or agreements by the manufacturer are needed. Implied warranty recovery is based upon two factors: (a) The product or article in question has been transferred from the manufacturer's possession while in a "defective" state, more specifically, the product fails either to be "reasonably fit for the particular purpose intended" or of "merchantable quality," as these two terms, separate but often overlapping, are defined by the law; and (b) as a result of being "defective," the product causes personal injury or property damage.[7]

■■ Appellee contends that the Uniform Sales Act codified the doctrine of privity and that any change must come from legislation. This argument has been rejected often by the courts.[8] Moreover, the Uni-

5. Chapman v. Brown, D.Hawaii, 198 F. Supp. 78, 104, 119; Asher v. Coca Cola Bottling Co., 172 Neb. 855, 112 N.W.2d 252, 255; Prosser, Torts, supra, note 3, at p. 1110.

6. Henningsen v. Bloomfield Motors, Inc., supra, note 4 (automobile); General Motors Corp. v. Dodson, supra, note 4 (automobile); Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (detergent); Randy Knitwear, Inc. v. American Cyanamid Company, supra, note 3 (cloth); State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449 (automobile); Williams v. Union Carbide Corp., 17 A.D.2d 661, 230 N.Y.S.2d 476 (safety mask); and cases

collected in Anno. 75 A.L.R.2d 39; Prosser, supra, note 3.

7. Note, Implied Warranties—The Privity Rule and Strict Liability—The Non-Food Cases, 27 Missouri Law Review 203 (1962).

8. "* * * the Uniform Sales Act, for all its alleged intent to pre-empt the field and to make uniform the law of sales, nevertheless did not, and does not, render static as of any given date the general law of sales in any particular jurisdiction * * *, but the same is still subject to modification by court decision, at least in the area of implied warranty here involved, to meet new or changing condi-

form Commercial Code, the most comprehensive proposed legislation on the subject, expressly leaves questions concerning privity to the judiciary.[9]

There seems to be no sound reason at this date for permitting recovery in food cases upon implied warranty and denying it in nonfood cases. A defectively manufactured, potentially-dangerous instrumentality like an automobile, which will travel at high speeds on crowded highways and in congested areas, is far more dangerous to its driver, its passengers and the public at large than is a contaminated food product in a can or package.

We are of the opinion that, regardless of the lack of contractual privity, the implied warranty of fitness and merchantability runs to the ultimate consumer for whose use the article or personal property had been purchased. The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentation, outweighs allegiance to a rule of law which, if observed, might produce great injustice. It is a new obligation attendant upon a new era, which dictates that the

tions or adjust to correct demonstrated inequities as is the case with respect to any other common law concept." Chapman v. Brown, D.Hawaii, supra, note 5, at page 102, of 198 F.Supp. See also Randy Knitwear, Inc. v. American Cyanamid Company, supra, note 3; Greenberg v. Lorenz, supra, note 4.

manufacturer should be held responsible to the consumer public for representations made for the purpose of promoting the sale of the product. Irrespective of the early rulings in this jurisdiction upon the requirement of privity *in food cases,* we are convinced that the buying public in the District of Columbia is better protected by eliminating the requirement for contractual privity in suits brought by the user against the manufacturer for breach of implied warranty resulting from a defectively manufactured product.

We express no views as to the existence of any defect in the present case, or of the sufficiency of proof to establish breach of implied warranty against the manufacturer. We rule that appellant should be allowed to proceed to trial on the alleged violation of the implied warranty rule in the absence of privity between them.

Reversed.

QUINN, Associate Judge.

I concur in the court's judgment but not with all that is said in the opinion.

9. Section 2-318 extends a seller's warranty to members of a family or household. Comment 3 states that "this section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extends to other persons in the distributive chain."